# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JERMAINE WASHINGTON, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 20-cv-662 (APM) |
| ANDREW SAUL, Commissioner of Social Security, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

I.     **INTRODUCTION**

Plaintiff Jermaine Washington brings this action pursuant to 42 U.S.C. § 405(g) against Defendant Andrew Saul, Commissioner of the Social Security Administration ("SSA"), challenging the denial of his applications for supplemental security income and disability insurance benefits. Plaintiff contends that an Administrative Law Judge ("ALJ") erred in reviewing the SSA's denial of Plaintiff's applications by (1) erroneously assessing Plaintiff's medically determinable impairments, and (2) applying an improper standard in evaluating Plaintiff's subjective complaints of pain.

This matter is before the court on Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance. For the reasons stated below, the court grant's Defendant's motion and denies Plaintiff's motion.

## II. BACKGROUND

### A. Statutory and Regulatory Framework

To qualify for disability benefits under Titles II and XVI of the Social Security Act, "a claimant must establish that he is disabled." *Jones v. Astrue*, 647 F.3d 350, 352 (D.C. Cir. 2011); 42 U.S.C. § 423. The Act defines "disability" as the "[inability] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[,] . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *cf. id.* § 423(d)(1). With certain exceptions not present here, an individual is disabled "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The SSA has established a five-step sequential process for assessing a claimant's eligibility for disability benefits, and an ALJ engages in that same process anew upon review of a determination by the Commissioner. *See* 20 C.F.R. § 404.1520(a)(4); *see Jones*, 647 F.3d at 352. The claimant carries the burden of proof on the first four steps. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must demonstrate that he is not presently engaged in "substantial gainful work." *Id.* §§ 404.1520(b), 416.920(b). Second, the claimant must show that he has a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). At step three, "the claimant must show that he suffers from an impairment that meets or equals an impairment listed in the appendix to the SSA regulations. If

so, he is found to be disabled . . . and the inquiry concludes." *Jones*, 647 F.3d at 353 (citing 20 C.F.R. § 416.920(d)). If not, the analysis proceeds.

Before reaching step four, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"), or his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Rule ("SSR") 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *1 (SSA July 2, 1996). As part of that inquiry, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96-8p, 1996 WL 374184, at *1. The ALJ then "proceeds to the fourth step, which requires [the claimant] to show that [he] suffers an impairment that renders [him] incapable of performing 'past relevant work.'" *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). Finally, at step five, the burden shifts to the ALJ "to demonstrate that the claimant is able to perform 'other work' based on a consideration of [his RFC,] . . . age, education and past work experience." *Id.* (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

B.   **Factual Background and Procedural History**

Plaintiff Jermaine Washington filed applications for supplemental security income and disability insurance benefits on October 27, 2016. *See* A.R. at 15.[1] In his applications, Plaintiff alleged disability beginning on October 1, 2011, *see id.*, based on sciatica, hypertension, high cholesterol, flat foot, irritable bowel syndrome, allergies, chronic bronchitis, asthma, enlarged

---

[1] Citations to the Administrative Record ("A.R.") are to the 21-part transcript of the record located at ECF Nos. 12–12-20.

heart, and insomnia, *see id.* at 234–39, 274.[2] Plaintiff's applications were denied initially on April 6, 2017, *see id.* at 15, 145–51, and upon reconsideration on September 14, 2017, *see id.* at 15, 158–69. Plaintiff thereafter requested an administrative hearing to review the SSA's decision. *See id.* at 15. That hearing was held on April 12, 2019, where both Plaintiff and a vocational expert testified. *See id.* at 15, 35–73.

On May 1, 2019, the ALJ issued a decision affirming the Commissioner's denial of Plaintiff's disability applications. *See id.* at 15–30. In performing the five-step evaluation process, the ALJ quickly dispensed with the first step, observing that Plaintiff "ha[d] not engaged in substantial gainful activity since the alleged onset date."[3] *Id.* at 18. At step two, the ALJ found that Plaintiff had seven severe "medically determinable impairments" that "significantly limit[ed] [Plaintiff's] ability to perform basic work activities as required by SSR 85-28." *Id.* Moving on to step three, the ALJ determined that none of Plaintiff's severe impairments, individually or in combination, "me[t] or medically equal[ed] the severity of one of the listed impairments" in Appendix 1 to the Commissioner's regulations. *Id.* at 19–20. The ALJ thus advanced to a determination of Plaintiff's RFC. *See id.* at 20; *Butler*, 353 F.3d at 997.

"After careful consideration of the entire record," the ALJ concluded that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with certain limitations. A.R. at 20. Specifically, the ALJ assessed,

> [Plaintiff] could only stand and/or walk for 4 hours in an 8-hour workday. He would require a sit/stand option at 30-minute intervals. He could occasionally operate foot controls with the right foot. He

---

[2] This was Plaintiff's second time applying for benefits. In April 2012, Plaintiff initially applied for disability insurance benefits as well as supplemental security income, for a period beginning on September 30, 2011. *See id.* at 77. Those claims were denied initially on June 26, 2012, and upon review by an ALJ on May 14, 2014. *See id.* at 77, 84.

[3] At the outset of his written opinion, the ALJ noted that because Plaintiff previously applied for benefits and was found not disabled through May 14, 2014, res judicata limited the ALJ's consideration of Plaintiff's instant applications to the period beginning May 15, 2014. *See id.* at 15.

4

> could occasionally climb ramps and stairs, stoop, kneel, balance, crawl, and crouch, and never climb ladders, ropes, or scaffolds. He would need to avoid concentrated exposure to extreme cold, extreme heat, wetness, excessive vibration, and hazards like moving machinery and unprotected heights. Further, he would need to avoid even moderate exposure to humidity and pulmonary irritants like fumes, odors, dusts, gases, and poor ventilation. Finally, he would need to work at a worksite with access to the bathroom at regular work breaks and the lunch period.

*Id.* "In making this finding," the ALJ explained that he had "considered all symptoms and the extent to which th[o]se symptoms c[ould] reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

In light of the assessed RFC and the testimony of a vocational expert, at step four of the sequential evaluation process the ALJ found Plaintiff was "unable to perform any past relevant work." *Id.* at 27–28. Finally, at step five, the ALJ factored the RFC and the testimony of the vocational expert with Plaintiff's "age, education, work experience" to conclude that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 29. Accordingly, the ALJ determined that a finding of "not disabled" was appropriate. *Id.*

Dissatisfied with the ALJ's decision, Plaintiff submitted a letter to the Appeals Council of the office of Disability Adjudication and Review (the "Appeals Council"). *See id.* at 232. In January 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. *See id.* at 1–6. Thereafter, Plaintiff filed this action, challenging the Commissioner's denial of benefits. *See* Compl., ECF No. 1. This matter is now before the court on Plaintiff's Motion for Judgment of Reversal, *see* Pl.'s Mot. for J. of Reversal, ECF No. 16 [hereinafter Pl.'s Mot.], and Defendant's Motion for Judgment of Affirmance, *see* Def.'s Mot. for J. of Affirmance & in Opp'n to Pl.'s Mot. for J. of Reversal, ECF No. 17 [hereinafter Def.'s Mot.].

5

## III. LEGAL STANDARD

An unsuccessful applicant for benefits may seek review of the Commissioner's decision by a federal district court. 42 U.S.C. § 405(g). "On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The ALJ's decision need not be "irrefutable"; it just has "to reflect a reasonable reading of the record." *Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 388 (D.C. Cir. 2020) (citing *Biestek*, 139 S. Ct. at 1154). The reviewing court must defer to the ALJ's decisions concerning the weight given to the evidence and may not substitute its judgment for that of the ALJ. *See Butler*, 353 F.3d at 999. "[T]he [ALJ's] ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards.'" *Jones*, 647 F.3d at 355 (quoting *Butler*, 353 F.3d at 999). The court should, however, be able to discern how the ALJ reached his decision. *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989). Ultimately, the inquiry involves determining whether "the ALJ . . . has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Id.* (internal quotation marks omitted). If the court concludes that the ALJ has not done so, it must remand the case to the SSA for further proceedings. *Id.* at 1050–53.

## IV. DISCUSSION

Plaintiff makes two arguments as to why the court should reverse the ALJ's decision denying Plaintiff's disability applications: (1) that the ALJ erred in finding that Chronic Regional Pain Syndrome ("CRPS") was not a medically determinable impairment at step two of the sequential evaluation process, *see* Pl.'s Mot., Mem. in Supp. of Pl.'s Mot. for J. of Reversal, ECF No. 16-1 [hereinafter Pl.'s Br.], at 3–10, and (2) that the ALJ erroneously evaluated Plaintiff's

6

subjective complaints of pain in determining his RFC, *see id.* at 10–14. The court takes these arguments in turn.

### A. Evaluation of Plaintiff's CRPS

Plaintiff first argues that the ALJ failed to properly evaluate Plaintiff's CRPS as a medically determinable impairment in accordance with regulation. *See id.* at 6–10 (citing SSR 03-02P, *Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome*, 2003 WL 22399117 (SSA, Oct. 20, 2003)). Specifically, Plaintiff contends the ALJ "failed to explain or identify the evidence of [] Plaintiff's [CRPS] which he considered 'insufficient' to support a diagnosis." *Id.* at 6–7. In so doing, Plaintiff argues, the ALJ also "failed to properly evaluate the evidence of record"—namely, a host of medical records that Plaintiff contends demonstrates that CRPS *is* a medically determinable impairment. *See id.* at 7–8. As explained in more detail below, Plaintiff's argument has some merit. The court agrees with Defendant, however, that even if the ALJ's determination with regard to CRPS was erroneous, it constituted harmless error. *See* Def.'s Mot. at 16–18.

Recall that at step two of the process, the burden is on Plaintiff to prove a "medically determinable impairment" that is "severe" as defined by the regulations. *Bowen v. Yuckert*, 482 U.S. 137, 146–47, n.5 (1987). The ALJ may "not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment[]." 20 C.F.R. §§ 404.1521, 416.921. Instead, an "impairment must be established by objective medical evidence from an acceptable medical source." *Id.* § 416.921. Once it is established that

the claimant has "a medically determinable impairment[], then" the inquiry turns to "whether [the] impairment[] is severe." *Id.*[4]

The impairment at issue here is CRPS, "a chronic pain syndrome most often resulting from trauma to a single extremity." SSR 03-2P, 2003 WL 22399117, at *1. SSR 03-2P provides ALJs with guidance on how to determine if CRPS is a medically determinable impairment and how the duration and severity of CRPS is established, among other things. *See id.* at *3–5. It states that "[]CRPS constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings." *Id.* at *4. "For purposes of Social Security disability evaluation," specifically, SSR 03-2P provides, "[]CRPS can be established [as a medically determinable impairment] in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant," such as a surgery or injury, so long as one or more of the following signs is also documented: swelling, autonomic instability, abnormal hair or nail growth, osteoporosis or involuntary movements of the affected region of the initial injury. *Id.* And although the signs of CRPS may not be consistently present in a claimant's medical records, SSR 03-2P explains, "[w]hen longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that []CRPS is present and constitutes a medically determinable impairment." *Id.* Determination of whether CRPS constitutes a medically determinable impairment is thus inherently complex. And therein lies the problem with the ALJ's explanation in this case.

---

[4] In order to be "severe" an impairment must significantly limit a claimant's ability to do basic work activities and meet the 12-month duration requirement. *See* 20 C.F.R. §§ 401.1522(a)–(b), 416.922(a)–(b); *Yuckert*, 482 U.S. at 146.

At step two of his analysis, the ALJ provided a list of Plaintiff's severe medically determinable impairments and stated, almost in passing:

> The claimant has been diagnosed with chronic pain syndrome and complex regional pain syndrome. However, pain is considered a symptom, not an impairment . . . . After a thorough review of the record, the undersigned finds that there is insufficient objective medical evidence to support these diagnoses. As such, the claimant's reported chronic pain syndrome, [and] complex regional pain syndrome[] . . . are not considered medically determinable impairments.

A.R. at 19 (internal citation omitted). This explanation is far from clear. First, the statement that "pain is considered a symptom, not an impairment" directly contradicts SSR 03-2P, which provides guidance to ALJs on how to determine whether CRPS is a medically determinable impairment. *See* SSR 03-2p, 2003 WL 22399117, at *3–4. CRPS certainly *can be* an impairment. *See id.* at *4 (stating that "CRPS constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms and laboratory findings").

Next, the ALJ stated that there is "insufficient objective medical evidence to support th[e] diagnos[i]s" of CRPS, A.R. at 19 (emphasis added), but that is not what the ALJ is tasked with at this stage of the process. The focus should be on whether CRPS is a medically determinable impairment, not whether it was properly diagnosed. If anything, the ALJ must explain why he found CRPS was not a medically determinable impairment *despite* the diagnosis. The criteria for diagnosis of CRPS and that for determination that CRPS is a medically determinable impairment are substantially similar. Both require that a complainant's subjective statements of pain be accompanied by one of five documented abnormal physical signs. *Compare* SSR 03-2p, 2003 WL 22399117, at *2, *with id.* at *3–4. The ALJ did not explain the disconnect between Plaintiff's prior diagnosis of CRPS and the objective medical evidence the ALJ found insufficient to support a finding that CRPS was a medically determinable impairment.

9

Plaintiff has a long history of reported pain originating from a flatfoot reconstruction surgery in September 2011. *See* Pl.'s Br. at 7–8 (citing A.R. at 400–02). As a result, Plaintiff has undergone multiple surgeries, including the implantation of a spinal cord stimulator, *see id.* (citing A.R. at 515, 559, 711–12), and has been prescribed a host of medications to manage his pain, *see id.* at 7 (citing A.R. at 457). The ALJ makes no mention of this record evidence in his discussion of Plaintiff's medically determinable impairments. Defendant attempts to make up for this deficit by offering his own analysis of the record evidence justifying the ALJ's determination, *see* Def.'s Mot. at 15–16, but the court cannot consider the post-hoc rationalization of counsel, *see Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962) ("[A] reviewing court . . . must judge the propriety of [agency] actions solely by the grounds invoked by the agency."); *see also Butler*, 353 F.3d at 1002 n.5 (same).

Despite this lack of clarity, it is unnecessary for the court to decide whether the ALJ's determination with regard to CRPS constituted legal error, because any such error was harmless. *See PKD Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful falls upon the party attacking the agency's determination."). Courts have consistently held that "errors at step two of the process do not necessarily require reversal so long as the ALJ considered the omitted impairment(s) in evaluating the remaining steps in the sequential analysis." *Hicks v. Astrue*, 718 F. Supp. 2d 1, 12 (D.D.C. 2010) (citing cases from the Sixth, Ninth, and Tenth Circuits); *also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (explaining that step two "acts as a filter if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments . . . , is enough to satisfy the requirement of step

two"). The question in this case is thus whether the ALJ considered Plaintiff's CRPS in the remaining steps of the sequential evaluation process. He did.

Although the ALJ determined that CRPS was not a medically determinable impairment, he found that Plaintiff had nine other severe impairments, *see* A.R. at 18, and thus proceeded to step three of the process to determine whether Plaintiff suffered from an impairment that met or equaled a listed impairment, *see id.* at 19. Plaintiff does not argue that a finding that CRPS was a medically determinable impairment would have changed the outcome at step three. Such an argument, if sufficiently proved, would evidence prejudice. *See* 20 C.F.R. §§ 404.1509, 416.909 (explaining that if one of the claimant's medically determinable impairments, or a combination of those impairments, meets or equals the criteria listed in the regulation, the complainant is deemed disabled and the inquiry ends). Instead, Plaintiff argues that the ALJ, in determining his RFC, "did not consider whether the combination of the Plaintiff's impairments, including his [CRPS], had any impact upon the Plaintiff's abilities to perform work-related activities." *See* Pl.'s Br. at 10; Pl.'s Opp'n to Def.'s Mot. for J. of Affirmance & Reply to Def.'s Opp'n to Pl.'s Mot. for J. of Reversal, ECF No. 20 [hereinafter Pl.'s Reply], at 4. But the record shows otherwise.

In determining Plaintiff's RFC, the ALJ found, "[a]fter careful consideration of the entire record," that Plaintiff was capable of performing "light work," with various limitations. *See* A.R. at 20. In so finding, the ALJ stated that he had "considered all [of Plaintiff's] symptoms," *id.*, including reports of Plaintiff's "chronic symptoms of right foot pain, leg pain, [and] back pain," *id.* at 21. Plaintiff avers that the court may not take the ALJ at his word that he considered the entire record. *See* Pl.'s Reply at 3 (citing *Butler*, 353 F.3d at 1002, n.5). Whatever the merit to that argument, the court need not take the ALJ's word for it because the decision itself evidences consideration of the entire record. *See id.* at 20–25. The ALJ's narrative discussion of Plaintiff's

11

RFC spans over five pages, *see id.*, and at least half of those pages are dedicated to a discussion of records related to Plaintiff's complaints of pain and evaluation of his CRPS over a four-year time period, *see id.* at 21–24.

For example, the ALJ discusses the record showing that at Plaintiff's initial examination for pain management services in September 2015, Plaintiff "exhibited tenderness of the lumbar facet joint, a positive straight leg raise on the right, and reduced 4-/5 right ankle dorsiflexion," but "otherwise [had] normal motor strength, a normal gait, normal balance, normal posture, and normal sensation and reflexes of the bilateral lower extremities." *Id.* at 22. The ALJ further notes that "[s]ubsequent examinations from September 2015 through February 2016 consistently revealed a normal gait without an assistive device, full strength of the bilateral lower extremities, and no neurological deficits." *Id.* "At a follow-up for right foot pain [i]n December 2016, an examination showed that [Plaintiff] was able to stand on his toes with little difficulty or pain, and demonstrated full muscle strength." *Id.* (citing A.R. at 441). And at a February 2019 physical examination where Plaintiff's CRPS was assessed, *see* A.R. at 777, the ALJ observes the record "showed hyperesthesia, but otherwise revealed normal coordination and full motor strength of the bilateral lower extremities," *id.* at 24; *see* A.R. at 774.

Thus, because it is clear that the ALJ went on to consider the impact of the symptoms of Plaintiff's CRPS "in evaluating the remaining steps in the sequential analysis," any error committed by the ALJ in finding that CRPS was not a medically determinable impairment was harmless. *See Hicks*, 718 F. Supp. 2d at 12.

### B. Evaluation of Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ applied an improper standard in evaluating Plaintiff's subjective complaints of pain as part of his RFC determination. "The applicable regulations

prescribe a two-step process to determine whether a claimant suffers from symptoms (including pain) that affect h[is] ability to perform basic work activities." *Butler*, 353 F.3d at 1004 (citing 20 C.F.R. §§ 404.1529, 416.929). The first step—that a claimant must provide objective medical evidence showing that a medically determinable impairment exists that could reasonably be expected to produce the pain or other symptoms alleged, *see* 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); *see also* 42 U.S.C. §§ 423(a)(5)(A), 1382(H)(i)—is not in dispute here. As discussed, Plaintiff was assessed as having nine severe medically determinable impairments. *See* A.R. at 18. The second step requires the ALJ to assess "the intensity, persistence[,] and limiting effects of the [claimant's] pain . . . 'to determine the extent to which the symptoms affect the individual's ability to do basic work activities.'" *Butler*, 353 F.3d at 1005 (quoting SSR 96–7p, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of An Individual's Statements,* 1996 WL 374186, at *1 (SSA July 2, 1996)). That inquiry requires "the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." *Id.* (internal quotation marks and citation omitted). It is here that Plaintiff takes issue with the ALJ's analysis.

"Because pain is 'subjective and difficult to quantify,'" in making a credibility determination, the ALJ must "take[] account of 'any symptom-related functional limitations and restrictions' reported by the claimant and h[is] treating physician 'which can reasonably be accepted as consistent with the objective medical evidence and other evidence.'" *Butler*, 353 F.3d at 1004 (quoting 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). Factors the ALJ considers as relevant to assessing a claimant's pain are:

> the claimant's daily activities; the 'location, duration, frequency, and intensity of' the claimant's pain; 'precipitating and aggravating factors'; '[t]he type, dosage, effectiveness, and side effects of any

13

medication' for pain relief; treatment the claimant receives or has received, other than medication, for pain relief; 'any measures' the claimant uses to relieve pain; and 'other factors concerning [the claimant's] functional limitations and restrictions due to pain.'

*Id.* (quoting 20 C.F.R. §§ 404.1529(c)(3)(i)(vii), 416.929(c)(3)(i)-(vii)). "[T]he ALJ 'must consider the entire case record' and may not disregard the individual's statements about the intensity and persistence of h[is] pain '*solely* because they are not substantiated by objective medical evidence.'" *Id.* at 1005 (emphasis added) (quoting SSR 96-7p, 1996 WL 374186, at *2). Moreover, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. The ALJ satisfied that standard here.

In assessing Plaintiff's RFC, the ALJ observed that Plaintiff "report[ed] chronic symptoms of right foot pain, leg pain, [and] back pain," A.R. at 21, but, applying the credibility standard articulated above, went on to find that "[a]ltogether, the objective medical evidence simply d[id] not demonstrate the severity of [Plaintiff's] subjective statements," *id.* at 25. As discussed above, *supra* pp. 11–12, the ALJ substantiated that finding with a thorough review of Plaintiff's medical record. And the ALJ did not, as is prohibited, solely rely on the objective medical evidence. *See* SSR 96-7p, 1996 WL 374186, at *2. The ALJ also discussed "other evidence" that conflicted with Plaintiff's statements. He stated:

> *Along with the objective medical evidence*, the claimant's subjective statements are not entirely consistent with other evidence of record. Notably, the record indicates that he was able to travel to South Carolina on multiple occasions, via airplane, during the period at issue (Ex. B7F, Testimony). He also stated that he was able to run for at least three miles in May 2015, despite complaints of chronic foot pain and dyspnea (Ex. B7F). Further, reports show a history of

14

> treatment noncompliance (Ex. B7F). As a whole, the undersigned finds that the claimant's subjective statements are not entirely consistent with the evidence of record.

A.R. at 25 (emphasis added).

Plaintiff challenges this analysis, first arguing that "[t]here is no requirement that a claimant's subjective statements be entirely consistent with the other evidence of record," Pl.'s Br. at 13, and that the ALJ "cherry-picked the evidence to support his credibility assessment," *id.* at 13–14. The court disagrees. Although there may not be a requirement "that a claimant's subjective statements be entirely consistent with the other evidence of record," Pl.'s Br. at 13, the regulations do provide that the ALJ may take into consideration such inconsistencies, in addition to the objective medical evidence, *see* 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). That is exactly what the ALJ did here—he noted the inconsistencies and considered them alongside the objective medical evidence. *See* A.R. at 25. That other, consistent, evidence may exist is of no consequence. The D.C. Circuit has made clear that "[w]hile contradictory evidence may exist, such credibility determinations are for the factfinder who hears the testimony," not for the court on review. *Brown v. Bowen*, 794 F.2d 703, 706 (D.C. Cir. 1986); *see also Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision."). Focusing on the objective evidence against Plaintiff's subjective complaints of pain is precisely the point of the credibility analysis; it does not constitute cherry picking.

Plaintiff next attempts to contradict or contextualize certain evidence upon which the ALJ relied—that Plaintiff traveled to and from South Carolina on multiple occasions and ran three to four miles in May 2015—with Plaintiff's testimony at the ALJ hearing. *See* Pl.'s Br. at 14 (citing

15

A.R. at 47–51). Plaintiff notes, for example, that when traveling he required ambulatory assistance at the airport, and he disputes the medical record documenting his run. *See id.* Defendant is right to observe that such a tactic—using Plaintiff's subjective statements to undermine objective evidence used to assess the credibility of Plaintiff's subjective statements—has a circular quality to it. *See* Def.'s Mot. at 23 (citing *Cox v. Colvin*, No. 14-1199, 2015 WL 5579603, at *4 (N.D. Ala. Sept. 23, 2015)). At most, Plaintiff shows that the record is susceptible to more than one interpretation, and where that is the case, deference is given to the ALJ. *See, e.g.*, *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006) (explaining where "evidence in the record is susceptible to more than one rational interpretation, [the court] must accept the [ALJ's] conclusions").

Finally, Plaintiff argues in passing that the ALJ "completely" failed to explain his finding that Plaintiff had a history of non-compliance. *See* Pl.'s Br. at 14. That argument is simply without merit. By the court's count, the ALJ explains Plaintiff's non-compliance with treatment at least three times in the decision. *See* A.R. at 24 (observing that "multiple providers recommended physical therapy, but there is no evidence that [Plaintiff] attended any sessions during the relevant period"); *id.* (explaining that "treatment notes indicate that [Plaintiff] does not always comply with his recommended diet"); *id.* at 25 ("[T]reatment notes indicate that [Plaintiff] has reported asthma medication noncompliance at times.").

Accordingly, the court concludes that the ALJ's evaluation of Plaintiff's subjective complaints of pain was proper because it "was based on substantial evidence in the record and correctly applie[d] the relevant legal standards." *Jones*, 647 F.3d at 355 (internal quotation marks omitted).

## V. CONCLUSION

For the foregoing reasons, the court denies Plaintiff's Motion for Judgment of Reversal, ECF No. 16, and grants Defendant's Motion for Judgment of Affirmance, ECF No. 17.

A separate final, appealable order accompanies this Memorandum Opinion.

Dated: June 18, 2021

Amit P. Mehta
United States District Court Judge